722 A.2d 664

**Elwood SMALL, Brian M. Meyers, Jon E. Yount, Abdullah Muhammed, George Feigley, Clayton Thomas, Kevin Lively, Marshall Hale and Stephan Williams**

**v.**

**Martin F. HORN, Secretary, Department of Corrections.**

**Appeal of Elwood Small, Jon E. Yount and Bryan Galvin (Intervenor).**

Supreme Court of Pennsylvania.

Submitted Sept. 8, 1998.

Decided Dec. 23, 1998.

602

Elwood Small, Pro se, Appellant.

Jon E. Yount, Pro Se, Appellant.

Bryan Galvin, Pro Se, Intervenor.

Heather Faust, Camp Hill, for Martin F. Horn, Appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

This is a direct appeal from an order of the Commonwealth Court sustaining preliminary objections of the Department of Corrections in an action by inmates confined in a state prison, who seek to invalidate the Department's revocation of their permission to wear civilian clothing.

In 1978 the United States District Court for the Eastern District of Pennsylvania approved a consent decree (the "Decree") entered into by the Department of Corrections ("Department") and a court-certified plaintiff class known as the Imprisoned Citizens Union. Under the Decree, the Department was required to permit prisoners to wear civilian clothing when housed in the general population, subject to the right to impose reasonable regulations with respect to prisoner clothing based on safety, sanitary and security considerations. The district court subsequently terminated the Decree on April 27, 1998, after Congress, in 1996, passed the Prison Litigation Reform Act.[1]

The official regulations governing state correctional institutions and facilities are published at 37 Pa.Code §§93.1—93.13. The latest revision of these regulations was promulgated in 1984, in accordance with the notice and comment requirements of the Commonwealth Documents Law, 45 P.S. §§1102–1602 ("Documents Law"), and the regulatory oversight provisions of the Regulatory Review Act, 71 P.S. §§745.1–745.15 ("Review

---

1. The Act allows a federal district court, under certain conditions, to terminate prospective relief granted to prisoners under a prior consent decree. *See* 18 U.S.C. §3626(b). Appellants lodged an appeal in the Third Circuit Court of Appeals, and the matter is currently under review by that court.

Act"). The regulations are silent on inmate clothing, stating only that "those items listed on the current Catalogue Purchase list may be purchased [by family and friends]." 37 Pa.Code §93.4(b).

Prior to 1997, the Department's policy on prisoner clothing was set forth in a Department directive issued in accordance with the Consent Decree, and known as "DC–ADM 815." This directive listed numerous items of civilian clothing that prisoners could either purchase from outside vendors, such as Sears or J.C. Penney's, or have family members bring to them.

On February 26, 1997, the Department amended DC–ADM 815 by issuing two new bulletins. The first one, DC–ADM 815–4, provides a restricted list of garments that inmates are allowed to purchase; these items are more in the nature of prison uniforms than civilian attire. The second bulletin, DC–ADM 815–5, states that effective November 27, 1997, all non-conforming apparel must be removed from the prisons. Inmates have the option of sending these garments home, donating them to charity, or having them destroyed. After that date, if a prisoner is discovered to possess non-conforming clothing, such clothing would be considered contraband, and the prisoner would be subject to disciplinary measures. According to the Department, these changes were made out of a concern for public safety and prison security, after six inmates escaped from a Pennsylvania prison the previous month. The Department alleges that possession of civilian clothing played a role in the escape.

On February 23, 1998, Appellants, nine inmates at the State Correctional Institution at Huntingdon, filed a *pro se* petition for review in the Commonwealth Court, invoking that court's original jurisdiction and naming the Secretary of the Department ("Secretary") as defendant. The complaint contained three counts. In Count I, Appellants asserted that DC–ADM 815–4 and 815–5 (the "Bulletins") are regulations and as such should have been promulgated pursuant to the notice-and-comment provisions of the Documents Law and the regulatory oversight provisions of the Review Act. Appellants requested

relief in the form of a court order: (i) declaring that the Bulletins were unlawfully promulgated, (ii) enjoining the Department from enforcing them, and (iii) requiring the Department to hold hearings to determine the value of clothing confiscated from Appellants.[2]

In Count II, Appellants asserted that the Decree created property rights in their favor to possess civilian clothing, and that the Bulletins deprived them of these rights without due process of law as guaranteed by the Pennsylvania Constitution. In this count, Appellants quoted the Pennsylvania Constitution's "takings" clause,[3] but the property interest that they claimed was taken was apparently not the civilian clothing itself, but the right to possess civilian clothing that was allegedly vested in them by the Decree. Appellants requested relief in the form of a court order declaring: (i) that various provisions of the Decree create "personal and property rights" in favor of Appellants, and (ii) that Appellants' property interest in their civilian clothing cannot lawfully be terminated without a hearing and "just compensation."

Finally, in Count III of their complaint, Appellants reiterated their claim that property was taken from them without due process of law, but in this count the property interest at issue appears to have been the clothing itself. Appellants asked for relief in the form of a "final decree" by the Commonwealth Court, requiring: (i) the Department to conduct hearings to determine the value of the clothing that was confiscated from Appellants, and (ii) compensation in the form of replacement clothing or "financial reparations."

Bryan Galvin, an inmate at SCI–Huntingdon, timely filed a petition to intervene as plaintiff in the case.

On March 25, 1998, the Secretary filed preliminary objections in the nature of a demurrer, in which he averred that the Department is not required to promulgate regulations when it adopts policies affecting prisoners, and that, because prisoners

2. In Count I Appellants did not request reimbursement for clothing taken, only hearings to determine its value.

3. "... nor shall private property be taken ... without just compensation being first made or secured." Pa. Const. Art. I, §10.

can choose to send their non-conforming clothing home, donate it elsewhere, or have it destroyed, the Bulletins do not work an unconstitutional taking. The Secretary contended that, because the privilege of wearing civilian clothing in prison was eliminated by the Department pursuant to a policy applicable to all inmates, no due process concerns are implicated.

On May 8, 1998, the Commonwealth Court entered a per curiam memorandum and order sustaining the Secretary's preliminary objections, dismissing Appellants' petition for review, and dismissing Bryan Galvin's petition to intervene as moot. In its memorandum opinion, the court noted that it was without jurisdiction to enforce a federal consent decree. It also found that because the prisoners have the option of sending their non-conforming attire home, they are not deprived of ownership of their property, and hence no taking has occurred. Finally, the court observed that the Documents Law exempts from its notice-and-comment provisions any regulation pertaining to agency organization, management or personnel. Finding that the Bulletins pertain to prison management, the court concluded that their promulgation absent notice and a public comment period did not run afoul of the Documents Law. The court did not address whether the Bulletins should have undergone the Review Act's regulatory oversight procedures.

The issues, as framed by Appellants, are as follows:

a. Are DC–ADM 815–4 and DC–ADM 815–5 administrative regulations subject to the publication requirements of the Commonwealth Documents Law and Regulatory Review Act?

b. Did the Department of Corrections ignore the Pennsylvania Code and its own regulations in promulgating DC–ADM 815–4 and DC–ADM 815–5?

c. Did the Department of Corrections' implementation of DC–ADM 815–4 and DC–ADM 815–5 violate contractual aspects of the [ICU] consent decree that are enforceable by the Pennsylvania Judiciary, particularly the Commonwealth Court?

608

d. Did deprivation of ownership of Appellants' civilian-clothing personal property pursuant to DC–ADM 815–5—either via confiscation or coerced disposal of any interest in such property—without just compensation deny due process of law guaranteed by the Constitution of Pennsylvania?

e. Did the court below err by sustaining [the Secretary's] preliminary objections in the nature of a demurrer?

f. Did the court below err by dismissing Appellant Bryan Galvin's petition to intervene?

An appellate court should affirm an order of a trial court (here, the Commonwealth Court) sustaining preliminary objections in the nature of a demurrer where, when all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts are accepted as true, the plaintiff is not entitled to relief. *Lampus v. Lampus,* 541 Pa. 67, 660 A.2d 1308 (1995). The court need not, however, accept any of the complaint's conclusions of law or argumentative allegations. *Willet v. Pennsylvania Med. Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850 (1997).

In Count I, entitled "Jurisdiction," Appellants attempt to state a claim based on the Documents Law and the Review Act by alleging deficiencies in the procedure by which the Department promulgated the Bulletins. In particular, Appellants contend that the Bulletins should have been promulgated in accordance with the Document Law's notice-and-comment procedures. *See* 45 P.S. §§1201, 1202. Appellants also claim that, under the Documents Law, the Bulletins should have been submitted to the Department of Justice for approval as to their legality, *see* 45 P.S. §1205,[4] and should have been filed with the Legislative Reference Bureau, *see* 45 P.S. §1207. Appellants claim that the Department's failure to follow these procedures renders the Bulletins invalid. *See* 45 P.S. §1208; *Lopata v. Commonwealth, Unemployment Comp. Bd. of Rev.,*

---

4. Section 1205 requires Pennsylvania's Department of Justice to review regulations for form and legality before they are deposited with the Legislative Reference Bureau. *See* 45 P.S. §1205. The Department of Justice has since been abolished and these duties of review transferred to the Attorney General. *See* 71 P.S. §732–204(b).

507 Pa. 570, 493 A.2d 657 (1985). Additionally, Appellants claim that the Review Act obligated the Department to submit the Bulletins to the Independent Regulatory Review Commission (the "IRRC") for review prior to promulgating them.

The Documents Law and the Review Act set forth procedures that must be followed any time an administrative agency, such as the Department,[5] issues binding regulations. Therefore, the first step in analyzing whether a cause of action has been stated with respect to the Documents Law or the Review Act is to determine if the Bulletins are in fact "regulations" for purposes of those acts or if they are, as the Secretary contends, mere "policy amendments" or "internal prison management decisions."

In his brief to this Court, the Secretary notes that a regulation is "the exercise of delegated power to make a law and is binding on a reviewing court like a statute. . . ." The Secretary claims that the Bulletins were "not promulgated by the Department of Corrections under any statutory authority in the administration of any statute." Therefore, he argues, the Bulletins are not regulations that fall within the scope of the Documents Law or the Review Act.

■ Administrative agencies are creatures of the legislature, however, and they have only those powers that are conferred by statute. *Western Pa. Water Co. v. Pennsylvania Pub. Util. Comm'n*, 471 Pa. 347, 370 A.2d 337 (1977). If, as the Secretary urges, the Department had no statutory authority to issue the Bulletins, then the Department acted *ultra vires* and the Bulletins are void for that reason. Contrary to the Secretary's claim, however, the Department's authority to make rules concerning the management of state correctional institutions can fairly be implied from its enabling statute.[6] Nonetheless, it does not necessarily follow that the Bulletins are "regulations" for purposes of the Documents Law and the Review Act.

5. The Department of Corrections is an "administrative department." 71 P.S. §310–1.

6. *See* 71 P.S. §310–1 (transferring to the Department all powers and duties possessed by the former Bureau of Correction and Office of

In *Independent State Store Union v. Pennsylvania Liquor Control Bd.*, 495 Pa. 145, 432 A.2d 1375 (1981), this Court held that the Liquor Control Board's decisions to change the discount rates afforded to retail outlets, and to add a service and handling charge to each bottle of merchandise, were "within the Board's discretion to exercise sound business judgment...." *Id.* at 156, 432 A.2d at 1380. The Court continued:

> Nor is there merit to the argument that the Board violated the Documents Law. Pursuant to the broad mandate of section 207(b) of the Liquor Code, the Board must frequently decide whether to add or delete products from store shelves, change prices, and alter marketing strategies. *These business-type decisions entrusted to the Board are a unique form of governmental activity which are not amenable to the normal public participation process, and not subject to the Documents Law. ...* Absent a clear statutory mandate, we cannot perceive a legislative intent to treat these business-type decisions as "regulations" falling within the scope of the Documents Law.

*Id.* at 156, 432 A.2d at 1380–81 (emphasis added). The Court thus recognized a category of agency decisions that are inherently committed to the agency's sound discretion and that cannot reasonably be subjected to the "normal public participation process." In other words, the Court "acted to prevent the regulatory process from being used as a means to micromanage [state] liquor stores." *Giant Food Stores, Inc. v. Commonwealth, Dep't of Health*, 713 A.2d 177, 181 (Pa. Cmwlth.1998).[7]

 The Department's restrictions on inmate clothing fall into this category. Because of the unique nature and require-

General Counsel related to the "administration, management and supervision" of correctional facilities).

**7.** The Legislature responded to *Independent State Store Union* by modifying the Review Act's definition of a regulation to include "actions of the Liquor Control Board which have an effect on the discount rate for retail licensees." 71 P.S. §745.3. Still, the Legislature did not change the definition of a regulation for purposes of the Documents Law, nor

ments of the prison setting, imprisonment "carries with it the circumscription or loss of many significant rights ... to accommodate a myriad of institutional needs ... chief among which is internal security." *Hudson v. Palmer,* 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984). Accordingly, the Department must enforce reasonable rules of internal prison management to ensure public safety and prison security. These rules must be modified as conditions change, different security needs arise, and experience brings to light weaknesses in current security measures. Where, as here, the measure has at most an incidental effect on the general public, it is reasonable to conclude that the Legislature did not intend the measure to be subjected to the "normal public participation process." [8]

The determination that the Bulletins do not constitute "regulations" for purposes of the Documents Law is buttressed by the fact that the Bulletins do not amend the existing official regulations governing state correctional institutions and facilities, which are published at 37 Pa.Code §§93.1—93.13. As noted above, the published regulations are silent on inmate clothing, stating only that "those items listed on the current Catalogue Purchase list may be purchased [by family and friends]." 37 Pa.Code §93.4(b). Notably, the regulations also state that only those Department directives that concern the interaction of Department inmates and employees with the community at large are published. 37 Pa.Code §93.1. Therefore, the restrictions in the Bulletins are not of the type that

did it amend either act in such a way as to reject the principle that there is a category of agency decisions that are committed to the agency's discretion and hence are not subject to the provisions of either act.

8. In their brief to this Court, Appellants claim that the Bulletins will significantly affect the general public because retail stores will no longer be able to sell clothing to inmates and the prisoners' families will no longer be able to bring them civilian clothing. Their complaint is less specific, and merely alleges that the Bulletins will "affect the substantial rights of ... the public...." This is essentially a legal conclusion which, as noted, need not be accepted by this Court. Moreover, contrary to Appellants' claims, the Bulletins' external effect will be *de minimus.*

were intended to be subject to the notice-and-comment provisions of the Documents Law.

The conclusion that the Bulletins do not constitute regulations, but instead embody decisions that are inherently committed to the agency's discretion, is also dispositive of Appellants' claim that they are invalid due to the Department's failure to comply with other mandates of the Documents Law. In particular, Appellants claim the Department was required to submit the Bulletins for review by the Department of Justice, pursuant to Section 1205, 45 P.S., and to deposit their text with the Legislative Reference Bureau, pursuant to Section 1207, 45 P.S. These claims fail, however, inasmuch as Section 1205's legality-review requirement and Section 1207's depository requirement only apply to regulations that are to be published in the Pennsylvania Code, see 45 Pa.C.S. §§ 701, 702, which is not true of the Bulletins.

Appellants' only remaining claim in Count I is that the Bulletins are invalid because they were not submitted to the IRRC for review, as required by the Review Act.[9] The Review Act, however, does not create a private cause of action. See 71 P.S. §745.2(b).[10] Moreover, for the same reasons that the Bulletins are not regulations for purposes of the Documents Law, neither are they regulations for purposes of the Review Act. Accordingly, this claim does not entitle Appellants to relief.

Count II of the complaint is titled, "Personal and property rights reposited [sic] by a consent decree." In this count, Appellants claim to have acquired a property right to wear

9. The Review Act provides that when an agency wishes to promulgate regulations to be published in the Pennsylvania Code, the agency must first submit the regulation to the IRRC for review. See generally 71 P.S. §§745.5, 745.5a, 745.6, 745.7. The IRRC reviews the proposed regulation for, inter alia, statutory authority of the agency to promulgate the regulation, and "deviation of that regulation from the intention of the General Assembly in the enactment of the statute upon which the regulation was based." 71 P.S. §745.5a(d).

10. Section 745.2(b) states, "This act is not intended to create a right or benefit, substantive or procedural, enforceable at law by a person against another person or against the Commonwealth, its agencies or its officers."

civilian clothing by virtue of the federal Decree. They claim that the Department's actions have deprived them of this property right "without due process and equal protection of law guaranteed by the Constitution of Pennsylvania, Article I, §10, which provides: 'Nor shall private property be taken ... without just compensation being first made or secured.'"

■ In sustaining the demurrer as to this count, the Commonwealth Court noted that it was without jurisdiction to enforce a federal consent decree. *See Wilder v. Department of Corrections,* 673 A.2d 30, 33 n. 7 (Pa.Cmwlth.), *appeal denied,* 545 Pa. 673, 681 A.2d 1344 (1996). In any event, the Decree was terminated shortly after Appellants filed their complaint, *see Imprisoned Citizens Union et al. v. Shapp,* 11 F.Supp.2d 586 (E.D.Pa.1998), albeit subject to appellate review. Moreover, the Decree itself, by its own terms, does not create a private cause of action in any individual against any of the defendants. *See Imprisoned Citizens Union,* 11 F.Supp.2d at 593 n. 9. Therefore, to the extent that Appellants rest their due process claim on the continuing vitality of the Decree, their claims are moot and no relief can be granted.

Count II can also be read to assert that the Department's abrogation of the Decree in itself constitutes a violation of constitutional due process guarantees. Although Appellants do not specify whether they are claiming that the Department's action violates procedural due process guarantees or principles of substantive due process, their allegations sound in procedural due process, as does the relief they seek, namely, a hearing to determine the value of the clothing taken from them, and compensation.

■ Appellants have not stated a cause of action under the Due Process Clause.[11] It is well settled that procedural due process concerns are implicated only by adjudications, not by state actions that are legislative in character.[12] *See Bi–*

11. Section 1 of the Fourteenth Amendment provides, "... nor shall any State deprive any person of life, liberty, or property, without due process of law...."

12. Adjudicative agency actions are those that affect one individual or a few individuals, and apply existing laws or regulations to facts that

*Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915); *Bernitsky v. The County of Schuylkill,* 381 Pa. 128, 112 A.2d 120 (1955); *Fetfatzes v. City of Phila.,* 108 Pa.Cmwlth. 552, 529 A.2d 1220 (1987); *W.J. Dillner Transfer Co. v. Pennsylvania Pub. Util. Comm'n,* 186 Pa.Super. 526, 142 A.2d 419 (1958); *but cf. Commonwealth ex rel. Margiotti v. Cunningham,* 337 Pa. 289, 10 A.2d 559 (1940) (invalidating, as violative of due process, a statute depriving depositors of a cause of action against the sheriff and authorizing county officers to transfer to the county treasurer certain unclaimed moneys, where a subsequent claimant to those moneys could not obtain judicial review of an adverse decision by the county treasurer). Because issuance of the Bulletins was not an adjudication, Appellants cannot succeed on a procedural due process theory.

■ Although Appellants quote the "takings" clause of the Pennsylvania Constitution in their complaint, their takings claim is subsumed under the principles relating to due process. Other courts have recognized that reasonable prison regulations regarding the quantity and type of property that inmates may possess do not violate due process guarantees. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 554, 99 S.Ct. 1861, 1882, 60 L.Ed.2d 447 (1979) (noting that prisoners' due process rights with respect to possession of property are not absolute, but are "subject to reasonable limitation *or retraction* in light of the legitimate security concerns of the institution") (emphasis added); *Ford v. Schmidt,* 577 F.2d 408 (7th Cir.1977) (upholding, against a constitutional challenge, regulations established by prison officials concerning the possession of property by inmates). Moreover, where a prisoner's property is sent to an address of his choice, no deprivation of property has taken place because, although the prisoner no longer has possession of the property, he still retains control over it. *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991). Accordingly, Appellants' takings claim must fail.

occurred prior to the adjudication. *See* 2 Pa.C.S. §101. Agency actions that are legislative in character result in rules of prospective effect and bind all, or at least a broad class of, citizens.

 Finally, Appellants use, seemingly gratuitously, the term "equal protection" in the text of one of their allegations (see above). The Equal Protection Clause,[13] however, does not obligate the government to treat all persons identically, but merely assures that all similarly situated persons are treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Where the challenged governmental action does not burden "fundamental" or "important" rights, *see McCusker v. Workmen's Compensation Appeal Bd.,* 536 Pa. 380, 385, 639 A.2d 776, 778 (1994), and does not make a suspect classification[14] or a quasi-suspect classification,[15] it does not offend the Equal Protection Clause as long as it is rationally related to a legitimate governmental interest. *Id.; see also Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *John Sheldrake, Inc. v. Pennsylvania Pub. Util. Comm'n,* 90 Pa.Cmwlth. 301, 305, 494 A.2d 1171, 1173 (1985).

 The Bulletins apply to all persons imprisoned in state correctional institutions, which is neither a suspect classification nor a quasi-suspect classification. Moreover, the freedom to wear civilian clothes while incarcerated is not a

**13.** Section 1 of the Fourteenth Amendment provides, "...; nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws." Pennsylvania's equal protection provision is set forth in Article I, Section 26 of the Pennsylvania Constitution, which provides, "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." This provision is analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment. *Love v. Borough of Stroudsburg,* 528 Pa. 320, 325, 597 A.2d 1137, 1139 (1991).

**14.** Suspect classes are race and national origin, *see Larsen v. Senate of the Com. of Pennsylvania,* 154 F.3d 82, 93 n. 16 (3d Cir.1998), and, for purposes of state (as opposed to federal) laws, alienage. *See Mathews v. Diaz,* 426 U.S. 67, 85, 96 S.Ct. 1883, 1894, 48 L.Ed.2d 478 (1976).

**15.** Quasi-suspect classes are gender, *see United States v. Virginia,* 518 U.S. 515, 532–33, 116 S.Ct. 2264, 2275, 135 L.Ed.2d 735 (1996), and legitimacy, *see Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988). This Court has used the term "sensitive classification" when referring to quasi-suspect classifications. *See, e.g., McCusker,* 536 Pa. at 385, 639 A.2d at 778.

fundamental right. Therefore, the Bulletins need only pass the rational basis test. Under this test, the government need not have articulated the purpose or rationale supporting its action; it is enough that some rationale "may conceivably . . . have been the purpose and policy of the relevant governmental decisionmaker." *Nordlinger v. Hahn,* 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992); *see generally State v. Kyle,* 271 N.W.2d 689, 692 (Iowa 1978) (noting that in the prison setting, rational basis analysis "is colored by deference to prison authority in administration of prison matters"). In the present case, there are multiple reasons related to the unique requirements of prison management why the Department might require inmates to wear uniforms. The potential for civilian clothing to aid prisoners in escaping provides one justification. Another is afforded by the Department's need to maintain order and discipline among inmates by, for example, preventing differences in attire from leading to disputes among inmates, or preventing distinctive clothing from identifying membership in a prison gang. Consequently, the Bulletins do not violate the Equal Protection Clause.

In Count III of the complaint, entitled "Process due pursuant to administrative agency law," Appellants repeat their claim that the issuance of the Bulletins and the subsequent confiscation of their civilian clothing are invalid under principles of procedural due process. Accordingly, Appellants again request an evidentiary hearing to determine the value of the clothing taken from them, and compensation in the form of replacement clothing or money. In support of their contention, Appellants cite *Holloway v. Lehman,* 671 A.2d 1179 (Pa.Cmwlth.1996), for the proposition that when prisoners are deprived of property, the Administrative Agency Law, 2 P.S. §101, *et seq.,* entitles them to post-deprivation notice and a hearing to determine the validity of that deprivation. Appellants' reliance on *Holloway* is misplaced, however, because the *Holloway* plaintiffs were deprived of property after an adjudication by prison officials that resulted in a finding that they had engaged in misconduct. In the present case, Appellants allege that they were deprived of property as a result of the

Bulletins, which, as already noted, do not proceed from an adjudication. Hence, both *Holloway* and the Administrative Agency Law's notice and hearing requirements are inapplicable. Consequently, in Count III, Appellants have not stated a claim on which relief can be granted.

As a final matter, in several of the allegations in the complaint, Appellants state, without elaboration, that the Bulletins have deprived them of contract rights given to them by the Decree. Appellants cite no authority for the proposition that principles of Pennsylvania contract law govern this federal Decree. Even if contract law did apply to this situation, as noted above, the Decree itself, by its own terms, does not create a private cause of action in any individual against any of the defendants. *See Imprisoned Citizens Union*, 11 F.Supp.2d at 593 n. 9. Moreover, the fact that the Decree has been terminated precludes recovery under any theory that depends on the Decree being in force.

In summary, accepting all material facts set forth in the complaint and all inferences fairly deducible from those facts as true, Appellants are not entitled to relief. Consequently, the complaint was properly dismissed, and Brian Galvin's petition to intervene as plaintiff was rendered moot and was, therefore, properly dismissed as well.

The order of the Commonwealth Court sustaining the Department's preliminary objections in the nature of a demurrer, dismissing the petition for review, and dismissing as moot Bryan Galvin's petition to intervene is affirmed.