**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4081
_____

RONALD BANKS,
                                        Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
REV. ULLI KLEMM, ADMINISTRATOR OF RELIGION;
JAMES J. MCGRADY, SUPERINTENDENT;
MICHAEL HOOVER, DEPUTY SUPT.- CENTRALIZED SERVICES;
REV. JOHN RITCHEY, FACILITY CHAPLAINCY PROGRAM DIRECTOR
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3:10-cv-01480)
District Judge:  Honorable James M. Munley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2015
Before:  RENDELL, GREENAWAY, JR. and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 9, 2015 )
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

After his transfer to SCI – Somerset, Ronald Banks, a Pennsylvania inmate, filed an amended complaint against the Secretary of the Pennsylvania Department of Corrections ("DOC"); the Religion, Volunteer, and Recreational Services Program Administrator for the DOC (Ulli Klemm); and three prison officials at SCI – Retreat, where he had resided previously. As we write primarily for the parties, we will refer to the details only to the extent they are necessary to the analysis.

Essentially, Banks alleged that while he was incarcerated in the Secure Special Needs Unit at SCI – Retreat, his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), the First Amendment, and the Equal Protection Clause were violated by prison policies relating to participation in the Islamic feasts of Eid al-Fitr and Eid al-Adha and to the use of prayer oils during religious services. He also alleged that a DOC memorandum issued by defendant Klemm to all DOC Chaplaincy Program Directors limiting indigent Muslims in high security and general population units from participation in the Islamic feasts was not promulgated in compliance with Pennsylvania's Commonwealth Documents Law.

Banks sought declaratory judgments that the defendants' actions violated his rights under the First Amendment, the Equal Protection Clause, and RLUIPA. He also sought several injunctions against all the defendants, including a general injunction to "put an end" to the acts and policies described in his complaint, and more specific injunctions to

constitute binding precedent.

modify DOC Policy DC-ADM 819 (to allow indigent Muslim prisoners to be placed in debt to participate in the feasts of Eid al-Fitr and Eid al-Adha) and DOC Policy Statement #3.1.1. (to utilize the Inmate General Welfare Fund ("IGWF") to purchase food for the two feasts for indigent Muslims in the high security units and general population). He also requested damages from each defendant.

The defendants moved for summary judgment, which the District Court granted. The District Court first concluded that Banks could not recover compensatory and punitive damages under RLUIPA, and that his claims for injunctive and declaratory relief were moot because he had been transferred to SCI – Somerset. The District Court also stated that even if other damages were available or if his case were not moot, Banks would not be entitled to relief because Islam did not compel participation in the feast meals or the use of prayer oils. Applying Turner v. Safley, 482 U.S. 78 (1987), the District Court rejected the First Amendment claims. The District Court also considered and rejected the Equal Protection challenge. Banks appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291. The Court exercises plenary review over the District Court's grant of summary judgment in favor of the defendants. Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001). We may affirm on any basis supported by the record. See Erie Telecomms., Inc. v. City of Erie, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988).

Banks' case, in large part, is moot. RLUIPA does not allow for the recovery of money damages. See Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012) ("RLUIPA does not permit an action against Defendants in their individual capacities . . . [t]hus, RLUIPA cannot impose direct liability on Defendants."); see also Laskaris v. Thornburgh, 661 F.2d 23, 25-26 (3d Cir. 1981) (explaining that the Eleventh Amendment bars a suit for damages against state officials acting in their official capacities). The only relief potentially available to Banks for his RLUIPA claims is injunctive or declaratory, but to the extent that Banks seeks that relief against defendants at SCI – Retreat, his claims are moot because he was transferred to SCI – Somerset. He no longer presents a live case or controversy for injunctive relief regarding the policies or practices at SCI – Retreat because an injunction where he is no longer imprisoned would not provide him meaningful relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993). On this record, any future incarceration of Banks at SCI – Retreat is speculative, so his case not does not present an issue capable of repetition, yet evading review regarding the relief against the SCI – Retreat defendants. See id. Although "[t]he mootness of a . . . claim for injunctive relief is not necessarily dispositive regarding the mootness of . . . [a] claim for a declaratory judgment," Jordan v. Sosa, 654 F.3d 1012, 1025 (10th Cir. 2011), Banks' claims for declarations the SCI – Retreat defendants are similarly moot, see id. at 1027-28 (10th Cir. 2011) (explaining that prison-specific claims are moot on transfer because a declaration that a prisoner was wronged at institution where he no longer

4

resides has no effect on a defendant's behavior toward him). Furthermore, Banks specifically noted in his complaint that the use of prayer oil, at least at Friday services, was not an issue at SCI – Somerset. Similarly, Banks' First Amendment and Equal Protection claims for other injunctive and declaratory relief against the defendants at SCI – Retreat are moot.

Remaining are his RLUIPA claims against Superintendent Beard and defendant Klemm for declarative and injunctive relief relating to the terms of the DOC-wide policies DC-ADM 819 and Policy Statement #3.1.1, his claims for damages for purported violations of the First Amendment and the Equal Protection Clause, and his claims of a violation of the Pennsylvania Commonwealth Documents Law.[1]

We conclude that summary judgment was properly granted on the Equal Protection claims. The District Court's analysis of how Christmas is treated as a cultural phenomenon or nationally recognized holiday (on pages 23-25 of the District Court's memorandum) and why the use of IGWF funds for it is different from the use of those funds for meals for some inmates on Eid al-Fitr and Eid al-Adha is sound. As the District Court explained, indigency is not a suspect class. There is a rational reason (cost-containment) for treating indigent versus non-indigent prisoners differently. Also as the District Court concluded, the ban on prayer oil stems from a distinct documented problem

---

[1] We agree with the defendants that Banks did not raise a due process claim in his amended complaint.

5

at that institution.[2]  And Banks did not controvert the evidence that RARs submitted by inmates of different faiths are treated the same.

Also, although the District Court did not explicitly address it, the defendants were entitled to judgment in their favor on the Commonwealth Documents Law claim.  The Documents law sets forth procedures to be followed when a state agency issues binding regulations.  See Small v. Horn, 722 A.2d 664, 668-69 (Pa. 1998).  However, Banks could not succeed on his Commonwealth Documents Law claim because the memorandum written by defendant Klemm that Banks cited was not a regulation under the terms of the statute.  A regulation is a rule promulgated through the statutory authority of an agency to administer a statute or to prescribe a practice or procedure before the agency.  45 P.S. § 1102(12).  DOC bulletins and policy statements are not regulations; instead they are "agency decisions inherently committed to the agency's sound discretion."  See Small v. Horn, 722 A.2d 664, 669-70 (Pa. 1998) (noting the DOC's need to be able to modify reasonable rules of internal prison management as conditions require); Bundy v. Beard, 924 A.2d 723, 727-28 (Pa. Commw. Ct. 2007).

---

[2] To the extent that Banks raises a challenge to an order denying his motion to compel disciplinary records relating to theft or abuse of prayer oils, we conclude that he has not shown that the District Court abused its discretion in denying his request as irrelevant (given that neither the identity of those who took prayer oils nor whether they were punished could controvert the prison officials' documentation of the theft problem) and unduly burdensome (as the prison did not maintain misconduct records in a way that they could be searched for the issue of problems with prayer oil).  See United States v. Al Hedaithy, 392 F.3d 580, 605 (3d Cir. 2004) (setting forth the standard of review for discovery rulings).

Banks also pursues RLUIPA claims against Beard and Klemm with respect to DC-ADM 819 and Policy Statement #3.1.1. DC-ADM 819 is the DOC's policy statement on religious activities. Among the religious accommodations it lists is that "special foods and diets may be provided as required for the celebration of major religious holidays consistent with established [DOC] policy." DC-ADM 819(G)(1). Banks seeks a modification of the policy to allow indigent Muslim prisoners to be placed in debt to participate in the feasts of Eid al-Fitr and Eid al-Adha. In effect, he wants a policy in which special foods (including optional items) must be provided for the celebration of Eid al-Fitr and Eid al-Adha. In relevant part, Policy Statement #3.1.1, the Fiscal Administration policy, states that IGWF funds may be expended only on approved categories, which include "gifts to inmate packages" at "major holidays" and "non specific religious items" for the chapel and other items "used for various religious and secular activities" in the chapel. Banks argues that to comply with RLUIPA, it should be modified to allow the use of IGWF funds to purchase food for the two feasts for indigent Muslims in the high security units and general population.

In addition to mootness grounds, the defendants argued, and the District Court alternatively noted, that Banks had not established that any sincerely held religious belief had been burdened. The conclusion was based on the premise that Islam did not require participation in a feast or meal on Eid al-Fitr and Eid al-Adha. In relevant part, RLUIPA provides:

7

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A substantial burden exists for the purposes of RLUIPA if "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).

If a litigant presents prima facie evidence that his free exercise rights were substantially burdened, the government must show that the burden is in furtherance of a compelling governmental interest and is "the least restrictive means of furthering that . . . interest." Washington, 497 F.3d at 277 (citing RLUIPA, 42 U.S.C. § 2000cc-1(a)). The application of the compelling interest standard is context-specific and deferential to the prison authorities' choices about how to run their institution. Id. at 283 (citing Cutter v. Wilkinson, 544 U.S. 709, 722-23 (2005)). "We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter, 544 U.S. at 722. A prison policy that "is related to maintaining good order and controlling costs" serves a compelling government interest. See Baranowski v. Hart, 486 F.3d 112, 125 (5th Cir. 2007).

8

The District Court erred in rejecting Banks' RLUIPA claim on the basis that Islam did not require participation in a feast meal. The religious exercise protected under RLUIPA includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief. Cutter, 544 U.S. at 715 (citing § 2000cc-5(7)(A)) (quotation marks omitted); Washington, 497 F.3d at 276 (explaining that a court does not inquire into whether a belief is compelled by, or central to, a religion). Banks professed his belief that full participation in a communal feast is central to the practice of his religion and essential to the receipt of blessings. Although the defendants countered that it was "undisputed" that Islam did not require participation in a feast or meal on Eid al-Fitr and Eid al-Adha, their evidence does not make the issue undisputed. Cf. Ford v. McGinnis, 352 F.3d 582, 590-91 (2d Cir. 2003) (considering a prisoner's belief about the feast of Eid al-Fitr and noting that religious authorities employed by the DOC cannot trump a plaintiff's sincere and religious belief in the evaluation of a First Amendment claim). Banks made assertions about the critical importance of full participation in the feasts. Taking all inferences in his favor, we conclude that he could also maintain a genuine issue of material fact regarding whether the government put substantial pressure on him to substantially modify his behavior and to violate his beliefs at the time of the Muslim feasts.

However, even assuming that Banks' religious exercise was substantially burdened, the defendants offered a financial rationale that serves as a compelling interest

9

to disallow the DOC's purchase of optional items for all or an account deficiency (although the District Court did not reach this step). Although Banks presented the alternative of allowing non-indigent inmates to pay for optional items or other feast costs for indigent inmates, the defendants provided evidence that they did not let inmates purchase items for each other on the basis of security concerns. The rationale they provided was that an inmate who buys things for another inmate could coerce that inmate to perform illicit or illegal acts, engage in blackmail, or otherwise jeopardize the security of the institution. On the record before us, it does not appear that the security and budgetary interests the defendants describe could be achieved by a different or lesser means.[3] See Baranowski, 486 F.3d at 125-26 (citing Cutter).

Similarly, in the First Amendment context, we do not evaluate whether a particular belief is true; we consider only whether the litigant sincerely holds a particular belief and whether that belief is religious in nature. See Ford, 352 F.3d at 590-91; cf. DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (explaining that a belief that is both sincerely held and religious in nature is entitled to constitutional protection). It is at least genuinely disputed whether the feasts and prayer oils are Banks' sincere beliefs that are religious in nature.

---

[3] Similarly, to the extent that Banks' claim was based on being deprived of the communal nature of the feast more than specific food items because of his assignment to segregated housing, the prison's interest in segregating certain inmates from the general population could not be differently achieved. See Cooper v. Tard, 855 F.2d 125, 130 (3d Cir. 1988).

To evaluate Banks' First Amendment claim, we must apply the four-factor test set forth in Turner v. Safley, 482 U.S. 78 (1987), to determine whether the policy challenged as impinging on rights is "reasonably related to penological interests." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (citing Turner, 482 U.S. at 89). As we have explained:

> [Turner] directs courts to assess the overall reasonableness of such regulations by weighing four factors. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," and this connection must not be "so remote as to render the policy arbitrary or irrational." Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests."

Id. (citing Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999) (internal citations omitted)).

Although the District Court's analysis of the First Amendment question focused too much on the dictates of Islam, its conclusion that the prison policy was reasonably related to penological objectives is sound. Also, the District Court noted alternatives ways to participate in the feasts. The cost-containment rationale serves as a valid reason for rejecting some of Banks' proposed alternatives. And while the District Court did not explicitly consider the use of IGWF funds or Banks' proposal that non-indigent inmates could purchase meals for indigent ones, as we noted above, the prison provided a

rationale for rejecting those alternatives.  Also, there were security concerns regarding the prayer oils (there was an institution-specific record of a problem with theft of prayer oil).

For these reasons, we will affirm the District Court's judgment.