IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Martin, : 
                Petitioner : 
                               : 
                v. : No. 136 M.D. 2015
                               : Submitted: November 20, 2015
Secretary John E. Wetzel, : 
Superintendent James A. Eckard, : 
                     Respondents : 


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI            FILED: December 15, 2015


       Before this court in our original jurisdiction are preliminary objections in the nature of a demurrer filed by John E. Wetzel (Wetzel), Secretary of the Department of Corrections (Department) and James A. Eckard (Eckard), Superintendent of SCI-Huntingdon, (collectively, Prison Officials) in response to a *pro se* petition for review filed by David Martin (Martin) challenging his placement in a type of restrictive housing units, now or in the future.[1]

---

[1] Martin was precluded from filing a brief.

In his petition for review, Martin alleges that he was moved from SCI-Huntingdon's general population to the Restrictive Housing Unit (RHU) for fighting and refusing to obey an order. He avers that he was continuously, unlawfully confined within the RHU under administrative custody status, despite his many appeals to Eckard and a hearing examiner to be released into the general population. Martin claims that his unlawful confinement has resulted in a violation of his Fourteenth Amendment right to due process and has impeded his ability to partake in rehabilitative programs to earn parole consideration.

Martin also avers in his petition that Eckard and others wished to send him to the Security Threat Group Management Unit (STGMU),[2] which is regulated

---

[2] Martin alleges in his petition for review:

> 15. On January 13, 2015, Respondent Eckard signed [Martin's] DC-141 part IV along with his subordinates who failed to identify themselves by way of signature or initials to substantiate their statement for supporting [Martin] being sent to the [STGMU].
>
> 16. [Eckard] and his subordinates made their decision a day before [Martin's] scheduled review (1/14/15) thus denying him a challenge of the reason for the referral to a SUB-RH4 that is NOT mentioned in any available policy such as the DC-ADM 801 or DC-ADM 802.
>
> 17. [Martin] promptly appeal[ed] to Respondent Eckard who responded on January 26, 2015 stating in part: "I did review their decisions; however, there is no indication my review took place prior to 1/14/15." The record discredits his statements which is done intentionally to falsify documents and misrepresent facts.
>
> 18. [Martin] filed a final level appeal to the Chief Hearing Examiner Robin M. Lewis who concurred with the [Program Review Committee] and Respondent Eckard on February 19, 2015 and only stated that the [STGMU] referral has not yet been approved.

**(Footnote continued on next page…)**

by an unlawful policy established by Wetzel without the required public notice and comment period and in violation of the Commonwealth Documents Law (Documents Law)[3] and the Regulatory Review Act (Review Act).[4]

Martin asks this Court for a preliminary and permanent injunction preventing the Prison Officials from transferring him to STGMU, and prohibiting the Prison Officials' "agents, successors in interest and all other persons in active concert or participation with them from harassing, threatening, punishing or retaliating against [Martin] because of this action or against any person who submitted a[n] affidavit in this case on behalf of [Martin]."  (Petition for Review at 8.)  He also requests that this Court grant him:  1) concurrent/supplemental jurisdiction for his federal constitutional money claim; 2) costs for legal filings and attorney fees; and 3) compensatory damages in the amount of $5,000.00 jointly and severally against each and every Prison Official.

---

**(continued…)**

> 19. [Martin] believes and therefore avers that Respondent Eckard is utilizing the referral process to cause [Martin] anxiety from isolation within the RHU.

(Petition for Review at 4.)

[3] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102-1602, and 45 Pa. C.S. §§501-907, which, collectively, are known as the "Commonwealth Documents Law."  This was the official short title of the 1968 enactment.  *See* Section 101 of the Act of July 31, 1968, P.L. 769.

[4] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§745.1-745.15.

The Prison Officials filed the instant preliminary objections in the nature of a demurrer[5] contending that Martin has failed to set forth a cause of action because he has not articulated a liberty interest to which any process is due pursuant to the Fourteenth Amendment because he has no right to be housed at a particular custody level or within a particular housing unit. Moreover, they argue that Martin has no right to receive a particular rehabilitative program that may lead to a favorable parole determination from the Board of Probation and Parole because parole is nothing more than a possibility, and a prisoner has no protected liberty interest in being released from confinement prior to the expiration of his term.

The Prison Officials also argue that Martin does not have standing to raise the claim that STGMU was established unlawfully as he is not housed there. Regardless, they argue that the policy which implemented the STGMU is exempt from the Documents Law and Review Act because it is a security policy that deals entirely with internal prison management decisions with no impact on the general public as its purpose is to "house and provide programming to inmates who exhibit certain behavior in connection with their affiliation with a Security Threat Group." (Preliminary Objections at 8.)

---

[5] In ruling upon preliminary objections in the nature of a demurrer, the Court must accept as true all well-pled facts and all reasonable inferences therefrom, and it must determine whether the facts pled are legally sufficient to permit the action to continue. *Karnes v. Attorney General of Pennsylvania*, 921 A.2d 591 (Pa. Cmwlth. 2007). For the Court to sustain preliminary objections, it must appear with certainty that the law will permit no recovery, and all doubt must be resolved in favor of refusing to sustain the objections. *Baravordeh v. Borough Council of Prospect Park*, 706 A.2d 362 (Pa. Cmwlth. 1998).

In ascertaining whether a due process violation has occurred, "a determination must initially be made that a protected liberty interest exists and, if so, what process is due." *Wilder v. Department of Corrections*, 673 A.2d 30, 32 (Pa. Cmwlth.), *appeal denied*, 681 A.2d 1344 (Pa. 1996). A prisoner has no protected liberty interest to be housed at any particular custody level. *Chem v. Horn*, 725 A.2d 226, 229 (Pa. Cmwlth. 1999). Furthermore, confinement in an RHU does not violate due process rights as segregated confinement does not impose an atypical, significant deprivation as compared to ordinary prison life. *Singleton v. Lavan*, 834 A.2d 672, 675-76 (Pa. Cmwlth. 2003). Because Martin does not have a protected right to be housed at any particular custody level, there has not been a due process violation with regard to his housing status.

With regard to Martin's claim that his continued housing within RHU prevented him from participating in programs that would earn him parole and violated his due process rights, "a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his maximum term of sentence." *Evans v. Pennsylvania Board of Probation and Parole*, 820 A.2d 904, 913 (Pa. Cmwlth. 2003). Rather, "parole is nothing more than a possibility, and if granted, it merely constitutes a favor given by the state, as a matter of grace and mercy, to a prisoner who has demonstrated a probability of his or her ability to function as a law-abiding citizen in society." *Id* (citations omitted). Martin's ability, or lack thereof, to participate in programs that could potentially expedite parole is not a protected liberty interest because parole is not a protected liberty interest. Thus, his confinement within RHU is not in violation of his due process rights.

The Prison Officials assert that Martin does not have standing to raise the claim that STGMU was established unlawfully pursuant to the Documents Law and Review Act as he is not housed within STGMU. An individual who is not "adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280-81 (Pa. 1975). Furthermore, "it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *Id.* Regardless of Martin's allegations that Eckard and others support moving him to STGMU, he is currently not housed within STGMU and, therefore, not adversely affected by STGMU or its founding policy. As a result, he lacks standing to bring this claim.

In any case, the Documents Law's and Review Act's procedures must be followed whenever an administrative agency issues binding regulations. *Small v. Horn*, 722 A.2d 664, 668-69 (Pa. 1998). Accordingly, "the first step in analyzing whether a cause of action has been stated with respect to the Documents Law or Review Act is to determine if the [directives] are in fact 'regulations' for purposes of those acts or if they are … mere 'policy amendments' or 'internal management decisions.'" *Id.* at 669. Only those directives that "concern the interaction of [Department] inmates and employees with the community at large" must be published. *Bundy v. Beard*, 924 A.2d 723, 727 (Pa. Cmwlth. 2007).

Our Supreme Court explained:

6

> Because of the unique nature and requirements of the prison setting, imprisonment 'carries with it the circumscription or loss of many significant rights ... to accommodate a myriad of institutional needs ... chief among which is internal security. Accordingly, the Department must enforce reasonable rules of internal prison management to ensure public safety and prison security. These rules must be modified as conditions change, different security needs arise, and experience brings to light weaknesses in current security measures. Where, as here, the measure has at most an incidental effect on the general public, it is reasonable to conclude that the Legislature did not intend the measure to be subjected to the 'normal [public] participation process.'

*Small*, 722 A.2d at 669-70 (citations omitted). Given that the purpose of SGMTU is to house inmates who require extra security measures, the policy is within the realm of SCI-Huntingdon's internal management decisions with, at most, an incidental impact on the general public. As such, Martin's argument that the establishment of STGMU violates the Documents Law and Review Act because it was established without a public notice and comment period is without merit.

Accordingly, the Prison Officials' preliminary objections in the nature of a demurrer are sustained and Martin's petition for review is dismissed.

_____
DAN PELLEGRINI, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Martin,                            :
                Petitioner          :
                              :
          v.                : No. 136 M.D. 2015
                              :
Secretary John E. Wetzel,      :
Superintendent James A. Eckard,  :
             Respondents    :

# **O R D E R**

AND NOW, this 15th day of December, 2015, the preliminary objections filed by Secretary John E. Wetzel and Superintendent James A. Eckard are sustained and the petition for review filed by David Martin is hereby dismissed.

_____
DAN PELLEGRINI, President Judge