56 A.3d 899

COMMONWEALTH of Pennsylvania, Appellee,

v.

Hubert Lester MICHAEL, Jr., Appellant.

Hubert Michael, Appellant,

v.

Commonwealth of Pennsylvania; Pennsylvania Department of Corrections; Honorable Tom Corbett, Governor, Commonwealth of Pennsylvania; Honorable Jim Cawley, Lieutenant Governor, Chairman Board of Pardons; Honorable Linda L. Kelly, Attorney General, Member, Board of Pardons; Louise B. Williams, Victim Representative, Member, Board of Pardons; Russell A. Walsh, Ph.D., Psychologist, Member, Board of Pardons; Harris Gubernick, Corrections Expert, Member, Board of Pardons; and Carol Aichele, Secretary, Commonwealth of Pennsylvania, Appellees.

Supreme Court of Pennsylvania.

Nov. 5, 2012.

354

Amy Zoe Gershenfeld Donnella, Federal Community Defender Chu, Philadelphia, Ronald C. Travis, Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, for Hubert L. Michael.

Amy Zapp, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

## *ORDER*

PER CURIAM.

Applicant, Hubert L. Michael, Jr., seeks to challenge refusals by the Court of Common Pleas of York County and the Commonwealth Court to enter orders staying his execution, scheduled for November 8, 2012.

Some eighteen years ago, Applicant killed sixteen-year-old Trista Eng. In 1995, he pled guilty to first-degree murder and was sentenced to death. He has exhausted avenues and/or opportunities for post-conviction merits review in the state and federal court systems.

On October 12, 2012, Applicant lodged a document in the common pleas court captioned "Expedited Motion for Order Granting Access for Defense Experts to Evaluate Petitioner" (the "Motion for Access"). In this stand-alone motion, he explained that he had initiated clemency proceedings before the Board of Pardons. Applicant asserted that he required the assistance of seven mental health and/or mitigation professionals and a court order directing the Department of Corrections to allow forensic interviews of Applicant by these experts. Applicant referenced concurring and dissenting opinions of Justices of the United States Supreme Court, which he contended established a right to due process and procedural safeguards in clemency proceedings. *See* Motion for Access at ¶ 13 (citing *Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 288, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (O'Connor, J., concurring); *id.* at 291–92, 118 S.Ct. 1244 (Stevens, J., concurring and dissenting)). In response, the Commonwealth asserted that the court lacked jurisdiction to award the requested relief, not the least because Section 9545(c) of the Post Conviction Relief Act forbids a stay of execution in the absence of a pending post-conviction relief petition meeting the requirements of the enactment and, where such petition is a serial one, a strong showing of

likelihood of success on the merits. *See* 42 Pa.C.S. § 9545(c)(1), (2); *Commonwealth v. Morris*, 573 Pa. 157, 822 A.2d 684, 693–94 (2003). Furthermore, the Commonwealth contended that clemency proceedings implicate, at most, very minimal due process rights in prisoners, which were being accommodated through the conventional process reflected in prevailing administrative regulations. Finally, it was the Commonwealth's position that Applicant's motion was dilatory and was advanced primarily to cause delay.

On October 16, 2012, the common pleas court denied the Motion for Access without prejudice and transferred the matter to the Commonwealth Court, expressing the belief that the motion sounded in mandamus appropriate to the Commonwealth Court's jurisdiction. Applicant lodged an appeal.

In the Commonwealth Court, Applicant filed a lengthy "Consolidated Petition for Review, for Writ of Mandamus, for Injunctive Relief, for Extraordinary Relief and for Emergency Stay of Execution." In addition to setting forth reasons supporting his request for access to interviews with the professionals identified in his previous motion, this petition also requested that Applicant be granted access to information concerning him provided to the Board of Pardons by the common pleas court, the Department of Corrections, and others; that Applicant's counsel be permitted to interview current and former corrections officers in preparation for the clemency hearing; that the hearing be stayed until these requests were accommodated; and that Applicant's execution be stayed to ensure a fair and meaningful hearing.[1]

1. Applicant later filed a separate, largely redundant motion in which he updated the Commonwealth Court concerning the asserted exigencies and urged that, in light of the procedural obstacles and delays caused by severe weather conditions, it was simply not possible for Applicant's experts to conduct interviews and formulate opinions pertinent to his clemency request prior to the date of execution. Applicant also pointed to Senate Resolution 6, directing the Joint State Government Commission to establish a bipartisan task force and advisory committee to conduct a study of capital punishment in Pennsylvania and to report their findings and recommendations. According to the motion, two of the four task force members and a dozen members of the advisory committee signed a letter to the Governor, indicating: "[We] do believe that carrying out an execution before our work is completed over the

In the Commonwealth Court, the litigants agreed that the authority to grant access to Applicant rested in the common pleas court, per Section 4303 of the Prisons and Parole Code, *see* 61 Pa.C.S. § 4303 (prescribing that access to a prisoner subject to a pending warrant of execution is strictly limited "without an order of the sentencing court"). The Commonwealth Court remanded the matter, in part, to the common pleas court to address Applicant's main access request.

On remand, the common pleas court granted the Motion for Access but refused to direct that the scheduled execution be stayed. Applicant filed a "Superseding Notice of Appeal" accompanied by a jurisdictional statement. The statement summarized the procedural history and set forth three questions for review, as follows:

Whether the Court of Common Pleas should have granted a stay of execution to enable [Applicant] to have meaningful access to mental health experts who could evaluate him and assess whether he suffers from Asperger's Disorder and its effects on his functioning, in order (a) to provide the results to the Board of Pardons in support of his application for executive clemency; and (b) if relevant, to provide the results to the United States District Court for the Middle District of Pennsylvania in support of his motion to reopen the proceedings in that court.

Whether a stay of execution is necessary in that case in the interest of fundamental fairness, where—through no fault of [Applicant]—the issue of the proper forum in which to secure an order allowing access for mental health experts was batted back and forth between the Court of Common Pleas and the Commonwealth Court, and once that issue had been resolved, Hurricane Sandy gravely disrupted the ability of experts to reach SCI–Greene and perform the necessary evaluations, thus depriving [Applicant] of the opportunity for a full and meaningful clemency hearing.

next fifteen months would greatly undermine the legislative intent of Senate Resolution 6—a comprehensive study of the effectiveness of capital punishment in Pennsylvania, as it pertains to cost, fairness, proportionality, impact, and many other factors."

Did the Court err in its original ruling in its conclusion that the filing was *ex parte* and that it lacked jurisdiction to grant access for the experts and a stay of execution?

On November 2, 2012, the common pleas court filed an opinion setting forth the reasoning in support of its order granting access but denying a stay of execution. In terms of the stay matter, the court initially questioned whether it had jurisdiction as no motion was directly before it and in light of Section 9545(c) of the Post Conviction Relief Act. *See Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721, 739–40 (2001) (holding that "a lower court may not exercise its inherent right to grant a stay except within the confines enumerated by § 9545(c)" of the Post Conviction Relief Act). To the degree that jurisdiction was present, the court reasoned:

A stay is an extraordinary remedy. It is more so when the remedy is sought to be exercised outside of established methods. In the present case, to the extent any stay was requested at all in this Court, the only reasons advanced were to gain more time to prepare for a clemency hearing. There was no substantial showing that even if the proffered expert findings came back in [Applicant's] favor, there would be a substantial likelihood of gaining clemency or otherwise avoiding execution.

Indeed, our examination of the clemency petition filed by [Applicant] which was provided to us by the Board of Pardons, reveals little by way of reasons why clemency should be granted or execution stayed. For the most part, [Applicant] deferred to his lawyers. One substantive statement he made amounted to not being the person he was in 1993. There is no claim of innocence, to the contrary, he offers no reason why he committed the murder. We conclude that the state's interest in finality of the proceedings and, ultimately, the carrying out of a lawfully imposed sentence outweighs any of those reasons advanced by [Applicant] to step in at this late date and put a halt to those proceedings.

*Commonwealth v. Michael*, No. CP–67–CR–0003699–1993, *slip op.* (C.P. York Nov. 2, 2012) (citation omitted).

Also on November 2nd, the Commonwealth Court denied Applicant's corollary motion, *see supra* note 1, including his request for a stay of execution. The court's order summarily referenced the United States Supreme Court's *Woodard* decision, *see Woodard*, 523 U.S. at 285, 118 S.Ct. 1244 (reflecting the view of four Justices of the United States Supreme Court that "the executive's clemency authority would cease to be a matter of grace committed to the executive authority" if it were constrained by external procedural requirements),[2] as well as Section 81.304 of Title 37 of the Pennsylvania Code, 37 Pa.Code § 81.304(a)(prescribing, subject to limited, enumerated exceptions, that "[r]ecords, documents and files maintained by the Board are confidential"). Applicant filed a notice of appeal and jurisdictional statement similar to that filed in the court of common pleas.

In light of the impending execution, we have treated Applicant's notices of appeal and jurisdictional statements as applications for reliefs, per Rule of Appellate Procedure 3316 ("When a trial court has entered an order granting or denying a stay of execution in a capital case, such order may be reviewed by the Supreme Court in the manner prescribed in Rule 1702(d)."), Rule 1702(d)("When a trial court enters an order granting or denying a stay of execution in a capital case, such order may be reviewed by the Supreme Court upon application pursuant to Rule 123. No appeal or petition for review need be filed in connection with an application for review of a stay order in a capital case."), and Rule 123.

In response, the Commonwealth maintains that the courts were without jurisdiction and authority to award a stay. Additionally, the Commonwealth asserts that Applicant should not be permitted to exploit the various procedural uncertainties he had created by filing serial, frivolous pleadings for the purpose of delay. Along these lines, the Commonwealth indicates:

2. We assume that the Commonwealth Court's reference to *Woodard* was to this plurality aspect of the opinion, since the only segment of the lead opinion which garnered a majority vote concerned the constitutionality of voluntary commutation interviews, *see Woodard*, 523 U.S. at 287–88, 118 S.Ct. 1244, subject matter which is not at issue here.

The pleading underlying this appeal was filed at the last possible moment, indeed past it, and there can be no explanation other than perceived tactical benefit. A fusillade of such pleadings went out in various courts without regard to procedure or supporting authority. That the underlying pleading was remanded was a function of the slipshod manner in which it was drafted. It would be perverse to permit defense counsel now to come before this Honorable Court and exploit that exigency which they themselves have created as a justification for further delay.

■ Upon our review, we agree with the Commonwealth's position that the courts did not err in refusing to enter a stay. In the Post Conviction Relief Act, the Legislature has plainly sought to limit judicial power to award a stay of execution to a range of circumstances beyond those which are present here. In the *Morris* line of decisions, this Court determined that the legislative judgment, in these respects, was reasonable and would be respected. *See, e.g., Morris*, 822 A.2d at 693–94.

We recognize that the *Morris* decisions left open a question as to whether there might be some scenarios, arising outside the range of those contemplated in the Post Conviction Relief Act, in which the courts might maintain jurisdiction and authority to grant a stay of execution. *See Morris*, 822 A.2d at 693 ("In that rare instance in which a claim is not subsumed within the context of the PCRA, we will need to consider the applicability of section 9545(c) at that time."). We conclude, however, that Applicant's motions and petitions filed in the common pleas court and the Commonwealth Court—and the deemed applications for relief in this Court—do not require a wholesale resolution of this residual question in order to reach an appropriate judgment here.

■ The Pennsylvania Constitution entrusts clemency decisions to the sole discretion of the executive branch. *See* Pa. Const. art. IV, § 9(a) ("In all criminal cases except impeachment the Governor shall have power ... to grant reprieves, commutation of sentences and pardons[.]"). Because there is no constitutional right to clemency, it is widely understood

that, at most, only minimal due process protections apply in the executive consideration process. *See, e.g., Workman v. Bell,* 245 F.3d 849, 852–53 (6th Cir.2001) (citing *Woodard,* 523 U.S. at 289, 118 S.Ct. 1244 (O'Connor, J., concurring)(explaining that "[j]udicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process.")).

This Court has held that the judiciary

can[not] impinge upon the exclusive jurisdiction of the executive branch of the government in [determining whether to commute a sentence]. Action by the Board of Pardons is in accordance with constitutional provisions and in no way comes under the aegis of the courts. Indeed, were a court to review the conduct of a hearing before the Board of Pardons it would be a clear invasion by judicial direction of the immunity granted the executive branch of our government. Such is not consonant with our constitutional doctrine of separation of powers.

*Commonwealth ex rel. Cater v. Myers,* 412 Pa. 67, 194 A.2d 185, 187 (1963) (quoting the reasoning of a common pleas court).

Here, there is no colorable allegation that the executive branch has not followed—and is not following—procedures set out in state law,[3] that Applicant has been deprived of his entitlement to ask for mercy, or that the clemency process is being administered in an arbitrary or capricious fashion. While we recognize the desire on the part of Applicant and his

3. Pursuant to administrative regulations, a prisoner subject to a warrant of execution is to be interviewed by voting members of the Board of Pardons and is to be accorded a public hearing, at which a representative is to be allowed to make a presentation a maximum of thirty minutes in length. *See* 37 Pa.Code §§ 81.231(b), 81.263, 81.292. There is no requirement for the Board to hear witnesses; however, it may request or require persons to give testimony. *See id.* § 81.293. Persons wishing to provide information to the Board are to communicate or correspond with the Board's administrator. *See id.* at § 81.294. The ultimate discretionary decision to grant or deny clemency, of course, rests with the Governor. *See* Pa. Const. art. IV, § 9(a).

362

attorneys to make the fullest and most effective presentation possible, there is no constitutional requirement for the executive branch to facilitate this.

Per Section 9545(c) of the Post Conviction Relief Act, the common pleas court and the Commonwealth Court lacked the authority to enter a stay.

The deemed applications for relief are DENIED.

Justice ORIE MELVIN did not participate in the consideration or decision of these matters.