# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Purcell Bronson, : 
                    Petitioner : 
           : 
          v. : No. 576 M.D. 2018
           : Submitted: April 16, 2021
John Wetzel, Secretary of DOC; : 
and his Agents; Barry R. Smith, : 
Facility Manager; Crystal Loy, : 
Unit Manager; Kelly Latterner, : 
Counselor; D. Mowrey, Counselor; : 
Tab Bickel, Deputy Secretary; : 
Michelle Ivicic, CCPM; Brook Kelly, : 
Unit Manager; David Close, Deputy : 
Facility Manager; Darren Ginter, : 
Unit Manager; Kenneth Hollibaugh, : 
Deputy Facility Manager; Unknown : 
Named DOC Personnel; Unknown : 
Named SCI-Houtzdale Staff; In their : 
official and private capacity, : 
               Respondents : 

BEFORE:  HONORABLE P. KEVIN BROBSON, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE BROBSON**          **FILED: August 3, 2021**

Before the Court are the preliminary objections of Respondents Secretary of

the Department of Corrections, John Wetzel, and other officials of the Department

of Corrections[1] (collectively, DOC) to an amended petition for review (Amended Petition) filed by Petitioner Purcell Bronson (Bronson), an inmate at the State Correctional Institution (SCI) at Houtzdale. For the reasons set forth below, we overrule, in part, and sustain, in part, DOC's preliminary objections.

## I. BACKGROUND

Bronson initiated this matter in August 2018 by filing a petition for review against DOC in this Court's original jurisdiction, seeking a declaratory judgment that specific DOC policies and practices violated his constitutional rights or otherwise violated the law, as well as an order requiring that DOC expunge reports of misconduct based on the challenged policies and practices. DOC filed preliminary objections to Claims A, B, and H through K of Bronson's petition. By memorandum opinion and order dated September 13, 2019, the Court sustained DOC's preliminary objections.[2] Bronson then petitioned this Court for leave to file an amended petition for review, which we granted as to Claim J (relating to deductions from Bronson's inmate account) and Claim K (relating to housing). Bronson then filed the Amended Petition, in response to which DOC filed the preliminary objections now before the Court.

---

[1] Bronson's petition further named as Respondents in their official and individual capacity Barry R. Smith, Facility Manager; Crystal Loy, Unit Manager; Kelly Latterner, Counselor; D. Mowrey, Counselor; Tab Bickel, Deputy Secretary; Michelle Ivicic, CCPM; Brook Kelly, Unit Manager; David Close, Deputy Facility Manager; Darren Ginter, Unit Manager; Kenneth Hollibaugh, Deputy Facility Manager; Unknown Named DOC Personnel; and Unknown Named SCI-Houtzdale Staff.

[2] *Bronson v. Wetzel* (Pa. Cmwlth., No. 576 M.D. 2018, filed September 13, 2019) (*Bronson I*).

2

As to Claim J, Bronson avers in the Amended Petition that he has no "[Act] 84 judgment"[3] against him that would authorize DOC to "make monetary deductions from [his] inmate . . . account[] for the purpose of collecting restitution or any other court-ordered obligation," and DOC cannot produce such a court order. (Amended Petition, Claim J ¶ 1.) Thus, he avers that DOC's ongoing seizure of 100 percent of his funds is an arbitrary taking of property and constitutes theft by deception, and DOC should have afforded him a hearing to contest what he characterizes as "the arbitrary . . . seizure of his funds to pay a non-existent [Act] 84 debt." (*Id.* ¶¶ 1-2.) Bronson avers that DOC's normal practice is to seize 20 percent of incoming funds to pay off debts unrelated to Act 84, such as postage, sick call, or photocopy fees, which debts Bronson admits he has. (*Id.* ¶¶ 3-4.) He further avers that, if an Act 84 judgment exists against an inmate, the required assessment is 20 percent, not 100 percent. (*Id.* ¶ 3.) Bronson claims, however, that DOC continues to seize 100 percent of his funds, apparently under the guise of an Act 84 debt, and has improperly calculated the seizure of funds from his account. (*Id.* ¶¶ 2-5.) Bronson asserts that DOC's actions, along with its failure to provide him with a due process hearing at which he could contest its actions, violate his Fifth and Fourteenth Amendment rights under the United States Constitution. (*Id.* ¶ 2, 8.) He seeks a declaratory judgment that DOC's actions, practices, and

---

[3] Section 9728(b)(5) of the Sentencing Code, 42 Pa. C.S. § 9728(b)(5), is commonly referred to as "Act 84" and provides:

> [DOC] shall make monetary deductions of at least 25% of deposits made to inmate wages and personal accounts for the purpose of collecting restitution, costs imposed under section 9721(c.1) [of the Sentencing Code, 42 Pa. C.S. § 9721(c.1)], filing fees to be collected under section 6602(c) [of the Judicial Code, 42 Pa. C.S. § 6602(c)] (relating to prisoner filing fees) and any other court-ordered obligation.

3

policies are unlawful as to these seizures and an injunction enjoining DOC from seizing more than 20 percent of his funds without first providing him with a due process hearing. (*Id.* ¶¶ 9-10.) He also seeks a return of what he refers to as "the 80 [percent] excess unauthorized seized funds since 1993, totaling $3,231.68[] to[ ]date," along with expenses, costs, and attorney's fees. (*Id.* ¶¶ 10-11.)

As to Claim K, Bronson avers in the Amended Petition that DOC arbitrarily voted to retain what he refers to as his "Z" and "H" housing codes without setting forth a rational reason and that DOC denied him his procedural due process rights by failing to hold a hearing at which he could contest its decision. (Amended Petition, Claim K ¶¶ 1-2.) With regard to the H code, Bronson avers that DOC failed to submit evidence that Bronson attempted to escape from a DOC prison, which Bronson claims is a requirement of the H-code status; as a result of his H-code status, DOC requires him to move to a new cell every 90 days. (*Id.* ¶¶ 4, 24-30.) Bronson also avers that DOC officials relied on a forged or falsified document, which indicated that Bronson killed his cell mate, as the basis for voting to retain Bronson's Z-code status that confines him to a single cell. (*Id.* ¶¶ 5, 17-18.) Bronson avers that DOC's decision serves no penological purpose other than to retaliate against him for his litigation activities against DOC. (*Id.* ¶¶ 6-12, 21-23.) Bronson also avers that DOC's intent was to prevent him from moving to a lesser custody classification, which would allow him to engage in programs beneficial for his commutation application. (*Id.* ¶¶ 7-9, 16.) As a result of DOC's housing code decision, Bronson avers that he is being treated differently than the alleged "3,889 [l]ife[-]sentenced prisoners that are allowed to [a] double cell, and . . . the 645" life-sentenced inmates similarly confined to a single cell, because the circumstances of his confinement are baseless. (*Id.* ¶¶ 13-16.) For all these reasons,

4

Bronson maintains that DOC's housing code decision and the denial of a due process hearing at which he could contest it are in violation of his First, Eighth, and Fourteenth Amendment rights under the United States Constitution. (*Id*. ¶ 33.)

DOC preliminarily objects to both Claim J and Claim K on the basis that Bronson failed to plead facts with sufficient specificity[4] and failed to state a claim upon which relief may be granted (demurrer).

## II. DISCUSSION

As set forth above, this matter comes before the Court on preliminary objections, and our review, therefore, is limited to the pleadings. *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 415 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007). We must accept as true the well-pled averments set forth in the petition for review and any inferences reasonably and logically drawn therefrom. *See Pa. State Troopers Ass'n v. Cmwlth.*, 606 A.2d 586, 587 (Pa. Cmwlth. 1992). We need not accept, however, "conclusions of law, unwarranted inferences from [the] facts, argumentative allegations, or expressions of opinion." *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). Nevertheless, given Bronson's *pro se* status, we engage in a liberal review of the Amended Petition to determine whether he is entitled to legal relief. *See Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984).

Pennsylvania Rule of Civil Procedure No. 1028(a) sets forth the bases upon which a party may preliminarily object to a pleading, including failure of a pleading to conform to a rule of court, insufficient specificity in a pleading, and demurrer. With regard to the first two bases set forth above and relevant to this matter,

---

[4] *See* Pa. R.C.P. No. 1028(a)(2), (3) (permitting preliminary objection based on failure of pleading to conform to rule of court and insufficient specificity in pleading, respectively).

Pennsylvania Rule of Civil Procedure No. 1019(a) provides that "[t]he material facts on which a cause of action . . . is based shall be stated in a concise and summary form." General allegations of wrongdoing, without the support of specific factual averments, fail to meet this pleading standard. *McCulligan v. Pa. State Police*, 123 A.3d 1136, 1141 (Pa. Cmwlth. 2015), *aff'd*, 135 A.3d 580 (Pa. 2016). As to the last basis set forth above, in order to sustain a preliminary objection based on a demurrer, it must appear with certainty that the law will not permit recovery on the claim. *Pa. State Lodge*, 909 A.2d at 416. Any existing doubt must be construed against sustaining the objection. *Id*.

Lastly, a demurrer "cannot aver the existence of facts not apparent from the face of the challenged pleading." *Martin v. Dep't of Transp.*, 556 A.2d 969, 971 (Pa. Cmwlth. 1989). "A speaking demurrer is defined as one which, in order to sustain itself, requires the aid of a fact not appearing on the face of the [objected-to] pleading . . . ." *Regal Indus. Corp. v. Crum and Forster, Inc.*, 890 A.2d 395, 398 (Pa. Super. 2005) (internal quotations removed) (quoting Black's Law Dictionary 299 (6th ed. 1991)). A speaking demurrer cannot be relied upon or considered in sustaining a preliminary objection. *Id*. An exception to this general prohibition exists, however, where a petitioner avers the existence of a written agreement and the agreement is relied upon to establish the petitioner's cause of action. *Martin*, 556 A.2d at 971. A respondent may in such a case attach the written agreement to its demurrer without creating an impermissible speaking demurrer. *Id*.

### A. Preliminary Objections to Claim J

#### 1. Failure to Plead Facts with Sufficient Specificity

As to DOC's preliminary objection that Bronson failed to plead facts with sufficient specificity in Claim J, DOC contends that, because Bronson references

Respondents, generally, in the Amended Petition and fails to identify any one particular Respondent responsible for the wrongful withdrawal of his funds, the Amended Petition fails to conform to Rule 1019(a). Bronson responds that the individual(s) responsible for the wrongful seizure of his funds would be identified through the discovery process. Preliminarily, we disagree with DOC's position that Bronson has not pled his claim with sufficient specificity. Bronson has identified that DOC is generally in charge of managing his inmate account and that, to the extent necessary, the specific individual(s) responsible for handling his inmate account can be identified through discovery.

## 2. Demurrer

As to DOC's preliminary objection to Claim J based on a demurrer, DOC's position is two-fold. First, as to any deductions from Bronson's account that DOC may have made pursuant to Act 84, DOC argues that Bronson cannot prevail because DOC had the statutory authority to make such deductions and the statute of limitations applicable to any Act 84 deductions has expired. Second, DOC asserts that Bronson's inmate account is in the negative and has been since the filing of his original petition. Any incoming funds are, thus, being used to pay down Bronson's outstanding balance, and Bronson is not entitled to a due process hearing relating thereto.

Although Bronson argues that Claim J focuses on non-Act 84 deductions (a term which he does not define), DOC asserts that Bronson has failed to state a claim upon which relief may be granted based on Act 84, seemingly implying that Bronson's claim is, in actuality, based on Act 84. DOC does this despite never stating that it made any Act 84 deductions from Bronson's account. Rather, DOC merely recites its legal authority to make Act 84 deductions and the statute of

7

limitations for challenges to Act 84 deductions. We note, however, that Bronson's Amended Petition is equally unclear as to whether Claim J is based on Act 84, as we are unable to ascertain whether his stance that DOC has been taking unauthorized deductions from his inmate account is: (1) based upon his averment that there is no order that would authorize Act 84 deductions, such that any deduction by DOC (regardless if it was for restitution, filing fees, or court-ordered obligations) necessarily would be a non-Act 84 deduction; (2) based upon his characterization of non-Act 84 deductions as deductions for debts, such as postage, sick call, and photocopies that are not the subject of Act 84; or (3) both. Thus, at this early stage of the litigation, we cannot reach a conclusion that DOC made any deductions pursuant to Act 84, let alone that Bronson cannot prevail on his claim as to those deductions because they are barred by the statute of limitations.

With regard to non-Act 84 deductions, DOC, seemingly characterizing these "deductions" as its application of incoming funds to pay down the negative balance of Bronson's inmate account, alleges in the alternative that it may apply funds in such a manner.[5] DOC attached to its demurrer a copy of Bronson's inmate account to demonstrate that the account has had a negative balance since the filing of Bronson's original petition and that DOC, therefore, has the authority to make the deductions. As to our ability to rely on the attached document, as discussed above, we cannot consider facts or documents raised by DOC that are not apparent from the face of Bronson's Amended Petition; the exception to this rule requires the document in question to be a written agreement, which the copy of Bronson's inmate account clearly is not. *See Martin*, 556 A.2d at 971. Even if we were to consider the attached

---

[5] Bronson notes in his Amended Petition that he has other debts, such as postage, sick call, and photocopy fees. (Amended Petition, Claim J ¶ 3.)

copy of Bronson's inmate account for its bearing on DOC's authority to withhold Bronson's funds, the document reflects only the eighteen-month period *after* Bronson filed his original petition. (*See* Preliminary Objections, Exhibit A.) It does not address the time period prior to the filing of the petition for review, which is the relevant period. In sum, we cannot conclude with certainty on the facts before us that the law will permit no recovery on Bronson's claims. *Pa. State Lodge*, 909 A.2d at 416.

As to DOC's statute of limitations argument, DOC mischaracterizes Bronson's Amended Petition as "admit[ting] that Act 84 deductions have been ongoing since 1993." (Preliminary Objections ¶ 19.) Rather, Bronson avers in the Amended Petition that he seeks the return of "unauthorized seized funds since 1993, totaling $3,231.68[] to[ ]date." (Amended Petition, Claim J ¶ 10.) Based on that supposed admission, DOC contends that the statute of limitations on Bronson's Act 84 claim has expired because more than two years has elapsed since DOC began making deductions. As DOC's argument is based solely on its mischaracterization of Bronson's Amended Petition, it is not clear to the Court at this stage whether Bronson's claim is time-barred.

### B. Preliminary Objections to Claim K

#### 1. Failure to Plead Facts with Sufficient Specificity

DOC first objects to Claim K of Bronson's Amended Petition by arguing that Bronson's claims for relief under the First and Eighth Amendment of the United States Constitution are not pled with sufficient specificity, as required under Pennsylvania's fact-pleading standard as set forth in Rule 1019(a). (*See* Preliminary Objections ¶ 32.) We agree. Bronson's Amended Petition states that "[DOC] ha[s] violated [Bronson's] rights as protected by the [Fir]st, [Eigh]th, and [Fourteen]th

9

[A]mendments to the U[nited] S[tates] Constitution," but Bronson does not elaborate *how* DOC's housing decision infringes upon his First and Eighth Amendment rights, other than to say that those rights were violated. (Amended Petition, Claim K ¶ 33.) Without sufficient averments of fact demonstrating that Bronson's First or Eighth Amendment rights were violated, this general allegation of wrongdoing fails to conform to Rule 1019(a). *McCulligan*, 123 A.3d at 1141. We, therefore, sustain DOC's preliminary objection to Bronson's First and Eighth Amendment claims.

## 2. Demurrer

### i. Retaliation

As to Bronson's remaining claims based on the Fourteenth Amendment, DOC first demurs to Claim K of Bronson's Amended Petition by arguing that Bronson fails to state a claim for relief concerning retaliation where, under our precedent, a housing determination is not considered an adverse action for purposes of a retaliation claim. DOC further contends that Claim K does not (1) specify a connection between a particular court case involving Bronson, (2) identify the individuals responsible for retaliating against him, and (3) aver that the lawsuit was a substantial or motivating factor for the adverse action, all of which DOC asserts are required to state a claim for retaliation. Lastly, DOC insists that prison officials must be accorded wide-ranging deference in managing the institutional security and internal order of a correctional facility, and DOC asks that we defer to its judgment in this case.

In *Mays v. Kosinski*, 86 A.3d 945 (Pa. Cmwlth. 2014), an inmate claimed that DOC officials increased his custody level for no apparent reason other than to retaliate against the inmate for filing a grievance against DOC. *Mays*, 86 A.3d at 948-49. Taking that allegation as true, we sustained DOC's preliminary

10

objections, holding that "[a] change of [an inmate's] custody level and his subsequent transfer [to more restrictive housing] cannot be considered adverse actions for the purpose of a prison retaliation claim." *Id.* at 949.

Citing to *Mays*, we held in *Bronson I* that Bronson's original petition failed to state a claim for relief as to retaliation, because a housing determination is not an adverse action for purposes of a retaliation claim. Here, after careful review, it is clear Bronson's retaliation claim in the Amended Petition is virtually identical to his original averment. Bronson continues to argue that DOC officials made the housing code decision in retaliation for Bronson's litigation activities, but he fails to plead any facts or law that could support a claim that a legally cognizable adverse action occurred for purposes of a retaliation claim. *See also Yount v. Dep't of Corr.*, 966 A.2d 1115, 1120 (Pa. 2009). Consequently, Bronson fails to state a claim for relief concerning retaliation.

*ii. Equal Protection*

DOC next demurs to Claim K on the ground that Bronson is not being treated differently than the other life-sentenced inmates at SCI-Houtzdale as it concerns the Z and H housing codes. According to DOC, Bronson's Fourteenth Amendment right under the United States Constitution to equal protection of the laws is, therefore, not violated by the housing code decision. The Equal Protection Clause of the Fourteenth Amendment assures that "all similarly situated persons are treated alike." *Small v. Horn*, 722 A.2d 664, 672 (Pa. 1998). Where the government action at issue does not burden a fundamental right, however, "it does not offend the Equal Protection Clause as long as it is rationally related to a legitimate governmental

11

interest."[6]  *Id.*  Under the rational basis test, the government does not necessarily have to articulate the purpose or rationale in support of its decision.  *Id.*  Rather, "it is enough that some rationale may conceivably . . . have been the purpose . . . of the relevant governmental decisionmaker."  *Id.* (internal quotations removed) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992)).

Bronson's Amended Petition claims that DOC's housing code decision confines him to a single cell and requires him to "change cells every 90 days . . . for no rational reason, causing [him] to suffer unnecessary arthritic pain . . . from moving heavy personal property from cell to cell."  (Amended Petition, Claim K ¶ 27.)  Bronson does not aver, however, that he is the only inmate being moved to a different cell every 90 days.  Bronson also admits that an alleged 645 life-sentenced prisoners are similarly confined to segregated housing.  Even accepting Bronson's allegations as true, he has not pled facts to support a claim that he is being treated differently than other similarly situated life-sentenced inmates.

Bronson also contends, however, that DOC's housing code decision prevents him from receiving benefits that may help his commutation application.[7]  The powers of commutation, pardon, and reprieve are granted in the Pennsylvania Constitution to the Governor of Pennsylvania and a Board of Pardons, which, upon application, may issue clemency as within their discretion.  PA. CONST. art. 4, § 9. There is no constitutional right of access to these methods of clemency, however. *See Commonwealth v. Michael*, 56 A.3d 899, 903 (Pa. 2012) (*per curiam*) (noting there is no constitutional right to clemency and only minimal due process

---

[6] The government action must also not offend a suspect or quasi-suspect classification to receive rational basis treatment, neither of which are relevant here.  *Small*, 722 A.2d at 672.

[7] Furthermore, we note that Bronson does not elaborate how he is treated differently from other inmates as it concerns commutation privileges.

12

protections apply in executive consideration process); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.") (quoting *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979)). DOC's housing code decision, therefore, does not affect any of Bronson's fundamental rights. It is further clear that DOC's housing code decision is rationally related to the legitimate interest of maintaining the internal order and institutional security of SCI-Houtzdale. "[P]rison officials must be accorded wide ranging deference on the adoption and execution of policies and practices that in their judgment are necessary to preserve internal order and to maintain institutional security." *Robson v. Biester*, 420 A.2d 9, 12 (Pa. Cmwlth. 1980); *see also Yount*, 966 A.2d at 1121 ("[A]dministrative prisoner transfers are presumed to further a legitimate penological objective."). For these reasons, Bronson fails to state a claim for relief as it concerns equal protection, his housing codes, and opportunities for commutation.

### iii. Procedural Due Process

Finally, DOC contends that Bronson does not have a right to be confined to a housing unit of his choosing and, without an underlying liberty interest or right at issue, Bronson's procedural due process rights are not violated by DOC's housing code decision. Bronson nevertheless avers that DOC singled him out because it "set forth no rational reason . . . why [DOC] would not remove [his housing codes]," and

13

because DOC failed to provide him a due process hearing at which he could contest the decision.[8] (Amended Petition, Claim K ¶ 15.)

In *Feliciano v. Pennsylvania Department of Corrections*, 250 A.3d 1269 (Pa. Cmwlth. 2021), we held that whether an inmate is entitled to procedural due process under the Fourteenth Amendment to the United States Constitution depends on whether the inmate has been deprived of a "legally cognizable liberty interest," which interest we recognized as arising from the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Feliciano*, 250 A.3d at 1275 (citing and quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To make this determination, the *Feliciano* Court adopted the fact-specific test established by the United States Court of Appeals for the District of Columbia in *Aref v. Lynch*, 833 F.3d 242 (D.C. Cir. 2016), which provides:

> [T]he proper methodology for evaluating [procedural due process] deprivation claims under *Sandin* is to consider (i) the conditions of confinement relative to administrative segregation, (ii) the duration of that confinement generally, and (iii) the duration relative to length of administrative segregation routinely imposed on prisoners serving similar sentences. We also emphasize that a liberty interest can

---

[8] The inmate in *Mays*, similarly argued that DOC's decision had no valid reasons supporting it, and the decision, therefore, violated his Fourteenth Amendment rights. *Mays*, 86 A.3d at 949. We addressed the question as a procedural due process claim, writing:

> Mays also asserts that DOC violated the Fourteenth Amendment to the United States Constitution by singling him out absent a reasonable rationale. The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its *procedural protection* must establish that one of these interests is at stake. For an inmate, a liberty interest in avoiding particular conditions of confinement may arise from state action. A liberty interest may [also] arise from the Constitution itself, by reason of guarantees implicit in the word liberty. However, such a liberty interest arises only when the restrictive condition imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id*. (emphasis added) (quotations, citations, and footnote omitted).

14

potentially arise under less-severe conditions when the deprivation is prolonged or indefinite.

*Feliciano*, 250 A.3d at 1279 (quoting *Aref*, 833 F.3d at 255).

As we have already concluded that Bronson is treated no differently in relation to his fellow life-sentenced inmates as it concerns housing, Bronson has not established that the conditions of his confinement are "atypical and significant . . . in relation to the ordinary incidents of prison life." *Feliciano*, 250 A.3d at 1275. Because there is no liberty interest or constitutional right to clemency, Bronson has not demonstrated that he is entitled to procedural due process by reason of his commutation application. *Michael*, 56 A.3d at 903. Accordingly, Bronson has failed to state a claim for relief as it concerns procedural due process.[9]

## III. CONCLUSION

Accordingly, we overrule DOC's preliminary objections to Claim J and sustain DOC's preliminary objections to Claim K, thereby dismissing Claim K.

---

P. KEVIN BROBSON, President Judge

---

[9] Insofar as Bronson alleges that DOC's housing code decision violates DOC's housing policies, in *Dantzler v. Wetzel*, 218 A.3d 519 (Pa. Cmwlth. 2019), we held that "[a] prison authority's adoption of policies and practices creates neither rights in inmates nor a constitutionally protected interest triggering the inmates' due process protection," and a "failure to comply with prison policy is not a basis for a cause of action." *Dantzler*, 218 A.3d at 524, *abrogated on other grounds by Feliciano* (quoting *Orozco v. Dep't of Corr.* (Pa. Cmwlth., No. 268 C.D. 2013, filed January 14, 2014) slip op. at 4-15); *see also Feliciano*, 250 A.3d at 1275 n.9 (explaining DOC's "regulations do not, in themselves, confer upon inmates any actionable rights." Accordingly, Bronson's contention that DOC's housing code decision was in violation of DOC's housing policies does not provide a basis for a cause of action. Bronson, therefore, fails to state a claim for relief in this regard.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Purcell Bronson,                :
              Petitioner     :
                            :
        v.              :    No. 576 M.D. 2018
                            :

John Wetzel, Secretary of DOC;   :
and his Agents; Barry R. Smith,   :
Facility Manager; Crystal Loy,    :
Unit Manager; Kelly Latterner,   :
Counselor; D. Mowrey, Counselor; :
Tab Bickel, Deputy Secretary;    :
Michelle Ivicic, CCPM; Brook Kelly, :
Unit Manager; David Close, Deputy  :
Facility Manager; Darren Ginter,   :
Unit Manager; Kenneth Hollibaugh, :
Deputy Facility Manager; Unknown  :
Named DOC Personnel; Unknown   :
Named SCI-Houtzdale Staff; In their :
official and private capacity,       :
              Respondents  :

## O R D E R

AND NOW, this 3rd day of August, 2021, Respondents' preliminary objections to Claim J of Petitioner Purcell Bronson's Amended Petition for Review (Amended Petition) are OVERRULED, and Respondents' preliminary objections to Claim K of Petitioner's Amended Petition are SUSTAINED. Claim K is hereby dismissed. Respondents shall file an answer to Claim J of the Amended Petition within thirty (30) days of the date of this order.

                                            P. KEVIN BROBSON, President Judge